Mr. Chief Justice ShaRKey
delivered the opinion of the court.
The complainants had recovered judgment against the Benton *735 Bank for the sum of §1673, and as the bank was insolvent, after the return of an execution this bill was filed to subject the amount of a judgment which the bank had recovered against Burton Yandell, James R. Burrus, William Yandell, Philip J. Burrus, James Morton, John M. Sharp, and W. C. Burrus, for the sum of §4266, to the payment of the judgment in favor of complainants. There seems to have been no further resistance than that Yandell, Burrus and others insisted that they had a right to make the payment in the notes of the Benton Bank, and accordingly in their answer, after averring that §1800 had been paid, they insist upon the right to pay the notes or their value, they being greatly depreciated; but the chancellor thought otherwise, and made a decree against the respondents for the full amount of complainant’s judgment, to be paid in money. By an amended answer, it is averred that the notes of the Benton Bank were worth only fifty-six cents in the dollar.
The respondents afterwards filed a bill of review to reverse the decree on the ground that they were improperly required to pay Robson &. Allen, in par funds, the full amount of their judgment, claiming the right to pay the amount as though the payment was to be made to the bank. They also object to the decree because no notice was taken of the payment of §1800, in consequence of which omission they say they may be again compelled to pay it. And they also aver that the attorney for complainantsdn the original bill had agreed to admit that the notes of the bank were worth but fifty-six cents in the dollar, and that the payment of §1800 had been made, in consequence of which agreement they omitted to introduce proof on these subjects. The bill of review was sustained, and a decree according to the prayer.
No objection has been taken to the right of complainants in the original bill to pursue this remedy, nor has the right of respondents to file the bill of review been questioned in such a shape as to call for special notice. Without therefore approving or disapproving the one or the other remedy, we will proceed to the merits of the controversy, on which alone do the parties rely.
*736 The complainants commenced this proceeding on the 22d of May, 1840, and on the 28th of February, 1842, the final decree was rendered oil the original bill.
From the foregoing statement it will be seen that the subject of controversy is whether Robson & Allen are entitled to receive from the respondents the amount of their judgment in money, or par funds, or whether they are to be placed in the shoes of the bank, and must receive its notes in payment. The several statutes in relation to the privileges of bank debtors, and the duties of the banks, are relied on to control the decision. By the act of 1840, all banks in' this state are compelled to receive their own notes in payment of their bills receivable and other claims, at their nominal value. By the act of 1842, the right to pay all debts due to the banks in their own notes is extended so as to entitle any one, garnisheed as a bank debtor, and also any one garnisheed by a bank, to pay in that way, and judgment can only be rendered to be discharged in the notes of the bank with which the debt was contracted, or to which it is transferred by the process of garnishment. If the act of 1842 had been in force when this proceeding was commenced, the matter would be plain enough, for although this is not a proceeding by garnishment, yet the analogy is complete. The act fixes the right of the bank debtor, and it cannot be varied by a change of remedy. But the act was passed and took effect on the 25th of February, 1842, but three days before the decree was signed, and although it was in force at the date of the decree, yet the rights of parties must be determined with reference to the law as it stood when the proceeding was commenced and process served. If the state of things at that time was such as to entitle the complainants to relief, nothing which subsequently occurred, without their instrumentality, can deprive them of that right. The decree should be rendered according to the rights of the parties as they stood at the beginning of the suit. To illustrate this, let us suppose the respondents had paid this debt to the Benton Bank after process served, such payment would not have exonerated them from liability to the complainants. In several cases very similar to this, *737 Chancellor Kent held that the rights of the parties must be determined as they stood at the service of process, and could not be changed by rights subsequently acquired or payments subsequently made. Brinkerhoff v. Brown, 4 Johns. Ch. R. 671; Williams v. Brown, Ibid. 682; McDermot v. Strong, Ibid. 687; Spader v. Davis, 5 Johns. Ch. R. 280. We may again refer to the analogy between this proceeding and the remedy by garnishee process at law, in which case the liability of the garnishee is governed with reference to the time the process was served. He must answer what he then owed, and the judgment is rendered accordingly. And here we may remark that the latter remedy would probably have been quite as appropriate in the present instance.
Aside then from the act of 1842, the question is, what were the respective rights of the parties under the act of 1840? The debtors, it is true, had a right to pay the bank in its own issues, or rather it was the duty of the bank to receive its own issues. The only right the debtors had arose out of this duty or obligation imposed on the banks, and not from any stipulations in the contract, or privilege positively granted to debtors by the act. But have the complainants a right to nothing more? If not, then they had no equity; their condition is made worse by compelling them to receive the notes. They started out with a judgment, or rather with a chose in action as the foundation of the judgment. The judgment is to be satisfied by the decree, and the decree by the promissory notes; so that after having pursued this round of litigation, they arrive at the end of it with their debt converted from one note to many. The act of 1840 is not, as we conceive, to be so construed as to produce such a result. The object of the legislature in passing the act, was doubtless to prevent the banks from coercing payment in gold and silver, and to compel them to receive as money, that which they had put into circulation as such, which had become greatly depreciated. The language of the act seems to look to the banks as the subject of the legislation; they were required to receive their own notes in payment.- The debtor, to be sure, received a corresponding or consequential benefit, but this benefit *738 to him, was not the motive which operated on the legislature. The obligation to receive these notes is not extended to other persons, and the act does not call for a construction so liberal and extended as to embrace any payments except such as were to be made to the banks. When it is attempted to be applied to the complainants, it is in derogation of common right, and must be strictly construed. The legislature saw that the act would not work with uniformity as to bank debtors, and provided a remedy by the act of 1842. By the act of 1840 the defendant had the power to defeat an assignment by plea in abatement, the effect of which was that the banks could not transfer the collection of their debts to other persons; they were bound to make their own collections, and that too in their own notes. But a transfer by process of law was unprovided for until 1842. That the legislature made this provision in 1842, is evidence that it was by that body supposed that no provision had been made for transfers by operation of law. This bill is not founded on the doctrine of substitution. The complainants do not ask to be substituted to the rights of the bank, but they ask that a sum of money due the bank may be arrested from the process in favor of the bank, and applied to the payment of their debt, on that principle of equity which will induce a court of equity to lend its aid in enforcing judgments at law, by subjecting that which a court of law cannot reach, after a proper effort to reach it under process has proved ineffectual. A judgment creditor is entitled in this way to reach a debt due by judgment to his debtor, because he cannot so reach it at law. Egberts v. Pemberton, 7 Johns. Ch. R. 208. If courts of equity will thus interfere in order that justice may be done, they will not permit the remedy to work to the prejudice of the complainant, unless compelled to do so by some stubborn rule of law. These debtors had a right to pay the bank in its own notes, but they have now no right to pay the debt to the bank, even in that way : the debt has been transferred. It has fallen into the hands of parties who are under no obligation to receive anything but gold and silver, and if it can be paid in anything else, it must be in consequence of a right resulting to the debtors from the nature of the contract. *739 The law does not say that all contracts made with banks shall be so paid. To entitle debtors to this right it must be a claim due the bank when the party offers to pay. This is not now a debt due the bank, and to such we do not think the statute applies. If an offer to pay had been made, or even a readiness to do so by possession of the notes, before the transfer, the question would be different. Let us suppose that the note of these debtors had been transferred before suit brought, and to an action in the name of the assignee they failed to plead the transfer in abatement, by which they waived any objection to the transfer. The effect would be to make the transfer valid; could they afterwards claim to pay the judgment in the notes of the bank? We have just decided that they could not, and the principle of the two cases is very much the same. The only difference is that in one case the transfer is valid because it was not objected to, and an assent thereby implied, and in the other case it is valid by law. In either case it is not a claim due the bank, and is not within the statute.
But a question then arises as to the amount the debtors are bound to pay. They have been called into a court of equity, and have a right to claim its protection against a payment which may be beyond the amount which would have discharged their debt when they were enjoined from paying it. They cannot throw the risk of depreciation since that time on the complainants, and pay in a currency which may have become utterly worthless, but as they could have paid in such currency at the time the complainants right attached, the value of the notes at that time must constitute the measure of liability. That is the amount which equity may claim to appropriate. If the notes were worth fifty-six cents in the dollar, then they must pay the complainants fifty-six cents for every dollar they owed the bank, or at that rate on a sufficient amount to satisfy the complainants’ demand, if they owe enough. In this way they lose nothing by the transfer. When they make this payment one dollar of the debt to the bank will be discharged by the fifty-six cents. The decrees were then both wrong. They must be reversed, and the cause remanded for further proceedings.